UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WENDY MAGUIRE,

    Plaintiff,

v.

ECO SCIENCE SOLUTIONS, INC., *et al.*,

    Defendants.

NO. C18-1301RSL

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Plaintiff Wendy Maguire's Motion for Partial Summary Judgment" (Dkt. # 13) and defendants' cross-motion for partial summary judgment (Dkt. # 16). Plaintiff seeks a summary determination that she is entitled to unpaid wages as specified in her employment contract, an award of exemplary damages and attorney's fees under RCW 49.52.070, and prejudgment interest on the unpaid wages. Defendants seek a declaration that plaintiff is not entitled to relief under the contract or RCW 49.52.070 or, in the alternative, a continuance under Fed. R. Civ. P. 56(d).

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 1

show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Colony Cove Props., LLC v. City of Carson, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. Singh v. Am. Honda Fin. Corp., 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, having heard the arguments of counsel, and taking the evidence in the light most favorable to defendants, the Court finds as follows:

## BACKGROUND

On June 21, 2017, plaintiff and Ga-Du Corporation, a wholly-owned subsidiary of defendant Eco Science Solutions, Inc. ("ESSI"), entered into an Employment Agreement as part of ESSI's acquisition of Ga-Du. Plaintiff assumed the role of Vice President of Business

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 2

Development and promised to "devote full business time during ordinary business hours and such additional time as is required for an executive position, attention, skill and efforts . . . to the performance of the duties required by or appropriate for her Position." Dkt. # 15-1 at ¶¶ 1-2. In exchange, ESSI agreed to pay her a base salary of $120,000 per year, plus stock options and benefits. Id. at ¶ 3. Either party could terminate the agreement, with or without cause, by giving thirty days' written notice. Id. at ¶ 9. If the employment terminated without cause, ESSI agreed to pay all "accrued and unpaid Salary" plus a "lump sum in cash equal to the total remaining Salary of the full Employment Term due under this agreement." Id. The "Term" of plaintiff's employment was to be two years. Id. at ¶ 1. "Cause" was defined to include such things as termination for "a substantial and repeated failure to perform," "gross negligence or willful misconduct with respect to the Company, and/or "failure to achieve mutually agreed upon performance metrics." Id. at ¶ 9. The Employment Agreement contained an integration clause merging and superseding "all prior and contemporaneous discussions, agreements and understandings" and designated Nevada law to govern the construction and enforcement of its terms. Id. at ¶¶ 14 and 16(a). Changes or modifications to the Employment Agreement had to be made in a writing signed by both parties. Id. at ¶ 14. A written modification dated July 30, 2017, amended the stock option provision of the agreement. Dkt. # 15-4 at 2.

On June 22, 2017, ESSI made clear that neither it nor Ga-Du had the money to pay the promised salaries and that those who had been given contracts would have to agree to defer receipt of compensation until ESSI was able to resume public trading and/or the company was otherwise generating revenues sufficient to satisfy the wage obligations. Dkt. # 19 at ¶ 6. ESSI indicated that Ga-Du managers and consultants would be free to pursue other opportunities and

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 3

activities to help offset the shortfall while their compensation was deferred. Dkt. # 18 at ¶ 11. Plaintiff agreed to this arrangement. Id.

Plaintiff has produced various email strings between July 2017 and April 2018 indicating that she was performing work for ESSI throughout this period. The tasks reflected in these strings include setting up an ESSI email account, participating in various meetings, pitching client development opportunities, coordinating job descriptions and business pipelines, and designing a trade show booth. Dkt. # 15-5 to 15-9. The exchanges are sporadic, however, and the Court assumes for purposes of this motion that they did not require plaintiff's full-time attention. In January 2018, the Chief Executive Officer of ESSI, defendant Rountree, questioned plaintiff's role within the organization, openly wondering whether she was an employee or an outside consultant and requesting that whatever role she filled be communicated to all of the relevant personnel. Dkt. # 15-8 at 2. It is not clear if or how these questions were answered, but the following month Rountree gave plaintiff the lead in coordinating ESSI's efforts toward developing "an attractive and professional forward face to the cannabis business community" at an upcoming industry expo event. Dkt. # 15-9 at 2. In early April 2018, plaintiff was working on establishing an affiliated Colorado entity that could handle new hemp accounts in that state.

On April 29, 2018, plaintiff emailed ESSI requesting payment of the compensation accrued to date and $10,000 per month going forward. Dkt. # 15-10 at 2. No payments were made.

In June 2018, Rountree and plaintiff discussed the process by which new Colorado accounts could be opened. Dkt. # 15-11 at 2.

In August 2018, plaintiff had her lawyers deliver a demand letter to Rountree, attaching a

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 4

proposed complaint for breach of contract and statutory wage violations. Dkt. # 18-1 at 4-7. That letter prompted a response from defendant Lewis, wherein he asserted that plaintiff had failed to devote adequate time and effort to ESSI's business interests, had engaged in competing activities, had disparaged the company, and had agreed that her salary could be accrued and deferred. Dkt. # 18-1 at 9-10. Lewis offered to settle the dispute by paying "the accrued sums to your client at such time as [ESSI] receives money to enable it to pay the accruals to all employees" and threatened to assert counterclaims if the matter were not settled. Dkt. # 18-1 at 10. In a subsequent letter, Lewis asserted that plaintiff had indicated that she was working for someone else, thereby terminating her employment with ESSI. Dkt. # 18-1 at 15. Plaintiff filed her complaint on August 31, 2019.

In September, Rountree and plaintiff were again discussing business development opportunities for Ga-Du and ESSI. On September 25, 2018, plaintiff wrote:

> Thank you for the call today. It's great to have a focus and get to work on the Washington, Oregon opportunities. I'll prepare and provide an outline of project parameters. Is fundraising an option? We had a PPM at play at one point. I'd like to get things moving here. It's been sitting too long without clear action.
>
> As the VP of Business Development[] representing[] Ga-Du Financial Services, I'd like to get your approval on my proposal before I get things moving. I expect you will love it.

Dkt. # 15-11 at 5. ESSI subsequently authorized plaintiff "to move forward in revenue generation for the states of Oregon and Washington . . . ." Dkt. # 15-11 at 9. Not everyone thought this was a wise move, however, given plaintiff's pending claims for hundreds of thousands of dollars against both the company and individual corporate officers. Dkt. # 15-11 at

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 5

9 and Dkt. # 15-12 at 2-3. The naysayers apparently prevailed: plaintiff was asked to vacate her office. Dkt. # 15-12 at 2. She requested clarification as to whether she should discontinue the work she had started in Oregon and Washington. After consulting with Lewis, Rountree responded that ESSI was not aware of any work she was doing for the company, that she had repeatedly indicated that she worked for a third-party consultant, and that any future communications would go through the parties' attorneys. Dkt. # 14-3 at 2 and Dkt. # 15-12 at 2.

On December 12, 2018, plaintiff provided written notice of her resignation as VP of Business Development for Ga-Du. Dkt. # 15-13 at 2.

## Discussion

**A. Breach of Contract**

In her motion for summary judgment, plaintiff relies exclusively on the unambiguous terms of the Employment Agreement and the undisputed facts of the case to establish an enforceable promise and its breach. Neither Washington nor Nevada case law is cited in support of the breach of contract claim. While there is implicit in the argument general propositions of contract law (such as that a contract is construed as written) and/or legal conclusions (such as that the Employment Agreement is enforceable), plaintiff does not reference a specific state's law in support of those propositions or conclusions. If there were a defect in plaintiff's legal analysis or assumptions - if, for example, Nevada law requires that a contract of employment be notarized in order to be enforceable or prohibits post-termination pay out provisions - defendants had the opportunity to point out where she went wrong in their opposition. They did not. A bare and unsupported assertion that plaintiff relied on the wrong state's substantive law in support of her breach of contract claim is unavailing.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 6

In the alternative, defendants argue that plaintiff's motion should be denied or continued under Fed. R. Civ. P. 56(d) so that they can take discovery regarding their defenses to the breach of contract claim. In particular, defendants seek evidence that:

1. plaintiff failed to devote her full-time efforts to the work of Ga-Du, thereby breaching ¶ 2 of the Employment Agreement;

2. plaintiff failed to mitigate her damages when she continued working for Ga-Du knowing she would not be paid until certain financial benchmarks were hit; and

3. the Employment Agreement was replaced with a new contract that required payment of salary only after the company was generating enough income to satisfy its wage obligations. Dkt. # 16 at 23-24; Dkt. # 17 at ¶ 6. Defendants make no effort to show that the sought-after evidence would impact the breach of contract analysis, however. In seeking relief under Rule 56(d), the nonmovant must show that the facts it seeks are "essential to justify its opposition." Even if the Court assumes all of the facts defendants want to pursue through discovery, they do not alter the conclusion that ESSI breached the Employment Agreement.

ESSI promised to pay plaintiff $120,000 per year for two years unless she were terminated for cause, in which case she would be entitled to only the compensation that had accrued before termination. If, as defendants suspect, plaintiff was in material breach of the employment contract because she failed to perform the duties of her position, the negotiated and agreed upon remedy is provided in ¶ 9 of the Employment Agreement: when ESSI realized plaintiff was in breach, it had the contractual right to terminate her employment for cause and end its salary obligations as of the date of termination. ESSI did not avail itself of the contractual remedy. It was not entitled to continue accepting plaintiff's performance under the contract

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 7

while secretly intending to assert a material breach and avoid its own contractual obligations.

With regards to the failure to mitigate defense, it is doubtful that the equitable considerations that prompted the imposition of a duty to mitigate apply in this situation. See 81 A.L.R. 282 ("[T]he rigid, positive principles which govern the right of action are tempered by equitable considerations applicable in the assessment of damages."). The United States District Court for the District of Nevada has held that (a) it is reasonable *per se* for a party to a contract to enforce his rights and pursue his remedies under the contract even if another course of action would have avoided some portion of the resulting damage and (b) "a duty to mitigate damages does not arise while a party enforces his rights by utilizing the remedies outlined in the agreement." A.I. Credit Corp. v. Gohres, 299 F. Supp.2d 1156, 1162 (D. Nev. 2004). Even if the duty applies, the affirmative defense merely reduces the amount of damages at issue. Defendants will have an opportunity to take discovery and prove the amount of an appropriate reduction, if any, but in the context of this case, the defense need not forestall a summary determination regarding the existence of a breach or the contractual remedy therefore.

Defendants' novation defense fails as a matter of law on the undisputed facts. Despite the fact that defendants were intimately involved in the negotiation of the Employment Agreement and the June 22, 2017, meeting, they have not proffered any evidence that the parties intended to extinguish the Employment Agreement and substitute a new understanding in its place. According to defendants, the day after the Employment Agreement was signed, the parties agreed to modify a single term of the contract to defer the payment of plaintiff's salary until ESSI's finances improved. A modification is not a novation, however. Fanucchi & Limi Farms v. United Agri Prods., 414 F.3d 1075, 1081 (9th Cir. 2005) (applying California law); Donell v.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 8

Perpetual Inv., Inc., 2006 WL 2792396, at *2 (D. Nev. Sept. 27, 2006) (applying Nevada law). The latter requires "[t]he substitution of a new obligation for an existing one . . . which thereby discharges the parties from all of their obligations under the former agreement inasmuch as such obligations are extinguished by the novation." Williams v. Crusader Discount Corp., 334 P.2d 843, 845 (Nev. 1959). "The intent of the parties to cause a novation must be clear." Zuni Constr. Co. v. Great Am. Ins. Co., 468 P.2d 980, 982-83 (Nev. 1970). Here, neither party took steps to terminate or otherwise extinguish their rights and obligations under the Employment Agreement, no new agreement was negotiated and offered as a substitute, and the parties continued to perform and to accrue wages under the original contract terms. Defendants, having participated in the relevant events, have not identified any discovery that would enable them to raise a genuine issue of material fact regarding their novation defense.

For all of the foregoing reasons, the Court finds that the Employment Agreement was a valid contract, ESSI breached the salary provisions of the contract, and plaintiff was damaged as a result of the breach. Contreras v. Am. Family Mut. Ins. Co., 135 F. Supp.3d 1208, 1227 (D. Nev. 2015) (stating elements of a breach of contract claim). Under Nevada law, a breach of contract entitles plaintiff to compensatory damages designed to make her whole and place her in the position she would have been in had the contract not been breached. Hornwood v. Smith's Food King No. 1, 807 P.2d 208, 211 (Nev. 1991). As a starting point, then, plaintiff is entitled to payment of the promised salary from June 21, 2017, to December 12, 2018, the date she resigned. Because defendants did not respond to plaintiff's argument that ESSI constructively discharged her by withholding her salary, the obligation to pay a lump sum in cash equal to the salary remaining on the two year contract also applies. Thus, plaintiff is entitled to recover

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 9

$240,000 in salary under the Employment Agreement.[1] In addition, compensatory damages recoverable on a breach of contract claim include "damages based on [plaintiff's] expectation interest as measured by

(a) the loss in value to him of the other party's performance caused by its failure or deficiency, plus

(b) any other loss, including incidental or consequential loss, caused by the breach, less

(c) any cost or other loss that he has avoided by not having to perform."

Road & Highway Builders v. N. Nev. Rebar, 284 P.3d 377, 382 (Nev. 2012) (adopting Restatement (Second) of Contracts § 347)). Plaintiff has reserved the right to prove additional damages at trial. Dkt. # 13 at 18 n.4.

**B. Statutory Wage Claim**

Under Washington law, "[a]ny employer or officer, vice principal or agent of any employer . . . who . . . [w]ilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" "shall be liable in a civil action by the aggrieved employee . . . for twice the amount of the wages unlawfully . . . withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations." RCW 49.52.050 and RCW

---

[1] As discussed above, the Court declines to decide at this juncture whether plaintiff had a duty to mitigate in the circumstances presented here or what portion of the loss could reasonably have been avoided.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 10

49.52.070. The dispositive issue regarding exemplary damages is whether plaintiff knowingly submitted to the withholding of her wages.

"A person knowingly submits to withholding of wages when he or she intentionally defers to his or her employer the decision as to whether, if ever, he or she will be paid." Durand v. HIMC Corp., 151 Wn. App. 818, 836-37 (2009). Simply staying on the job after an employer fails to pay wages when they are due and owing is not "knowing submission" to an unlawful withholding. Chelius v. Questar Microsys., Inc., 17 Wn. App. 678, 683 (2001). In this case, however, there is evidence from which a reasonable jury could conclude that plaintiff did not simply stay on the job after ESSI unilaterally decided to withhold her wages, but rather that she affirmatively agreed – along with the rest of the management team – that the executives would defer their salaries while the company was in start-up mode in the hopes that they would eventually develop a business model and income stream that could support their collective salaries. One of the few Washington cases with similar facts is Int'l Sleep Inst. of Wash., Inc. v. Int'l Sleep, Inc., 140 Wn. App. 1027, 2007 WL 2600860 (Sept. 11, 2007) (unpublished). In that case, the employee, a founding member of the company, agreed to defer payment of some portion of his salary until the company had the financial wherewithal to pay the wages. The court found that the proviso in RCW 49.52.070 contemplates such agreements and excepts them from the exemplary damages provision. Id. at *3. There is a genuine issue of fact regarding whether plaintiff deliberately and intentionally deferred to ESSI the decision whether and when it would ever pay the deferred salary.[2]

---

[2] In Chelius, Durand, and Kalmanovitz v. Standen, C14-1224RSL, 2016 WL 827145 (W.D. Wash. Mar. 3, 2016), the cases on which plaintiff primarily relies, the employees were not founding members of an under-capitalized start-up willing to forego short-term gains in the hopes of establishing

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 11

Unlike the situation in Int'l Sleep, however, at some point plaintiff indisputably revoked her agreement to defer her salary payments. She and/or her attorney sent demand letters on April 29, 2018, and again on August 15, 2018. She filed this lawsuit on August 31, 2018. Once she opposed the nonpayment of wages, the "knowingly submitted" proviso no longer shielded defendants from liability for exemplary damages. From April 29, 2018, forward, ESSI - and any officer, vice principal, or agent involved in the decision - willfully withheld monthly salary payments to which plaintiff was entitled under her contract. In addition, plaintiff's Employment Agreement provided that when her employment with ESSI terminated, all accrued and unpaid salary through the date of termination must be paid. Dkt. # 15-1 at ¶ 9. ESSI - and any officer, vice principal, or agent involved in the decision - willfully withheld payment of the accrued and unpaid salary for purposes of RCW 49.52.070. Finally, because ESSI constructively terminated plaintiff's employment without cause, she was also entitled to payment for the remainder of her two year contract term. Defendants' withholding of these payments triggers the double damages and attorney's fee provision of RCW 49.52.070.

**C. Prejudgment Interest**

Plaintiff is entitled to prejudgment interest on the compensatory portion of her wage claim at 12% per year.

---

a financially viable entity. In those cases, the employers ran into financial difficulty and the plaintiffs were generally willing to defer salary payments for a while. The employees always expected to be paid in full, however, and the employers knew the deferral was only temporary. In this case, a reasonable jury could conclude that plaintiff (and the rest of the management team) had only a hope, rather than an expectation, that their gamble of time and effort would pay off in the end, knowing that ESSI was just as likely to fold up shop as to ultimately pay the deferred salaries.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 12

## Conclusion

For all of the foregoing reasons, plaintiff's motion for partial summary judgment is GRANTED in part. Defendants ESSI and/or its wholly-owned subsidiary Ga-Du breached plaintiff's Employment Agreement and are liable for $240,000 in compensatory damages unless defendants establish that plaintiff had a duty to mitigate those damages and the amount of damages that could reasonably have been avoided. By withholding wages after plaintiff withdrew her consent to nonpayment, the employer and any officer, vice principal, or agent involved in the decision not to pay triggered the double damages and attorney's fees provision of RCW 49.52.070. Defendants' cross-motion and request for a continuance under Fed. R. Civ. P. 56(d) are DENIED.

Dated this 22nd day of August, 2019.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 13